NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JESSIE D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, F.V., M.D., M.D., C.D., *Appellees*.

No. 1 CA-JV 19-0073
FILED 11-14-2019

Appeal from the Superior Court in Maricopa County
No. JD34609
The Honorable Joseph C. Kreamer, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Jennifer M. Perkins joined.

**M c M U R D I E**, Judge:

¶1        Jessie D. ("Father") appeals the termination of his parental rights to his children, Free, born in 2010, Melony, born in 2012, Madeline, born in 2013, and Creed, born in 2015 (collectively, the "children"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        In August 2017, the Department of Child Safety ("DCS") removed the children from the care of Joana V. ("Mother").[1] DCS removed the children from Mother's care because of homelessness, a history of domestic violence with her significant other, and substance-abuse issues. At the time of removal, Father was incarcerated. In July 2017, Father was convicted of two counts of Aggravated Driving or Actual Physical Control While Under the Influence of Intoxicating Liquor or Drugs, a class 4 felony. Father was sentenced to seven years in prison with a maximum release date of December 2022.

¶3        In June 2018, DCS moved to terminate Father's parental rights to the children under the length-of-felony sentence ground, Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(4). The juvenile court held a termination hearing in November 2018, during which the case manager and Father testified. Following the hearing, the juvenile court found that Father's sentence was of sufficient length to deprive the children of a normal home life for years. The court further found that DCS had shown by a preponderance of the evidence that termination of Father's parental rights would be in the children's best interests. Accordingly, the court issued an order granting DCS's termination motion regarding Father. Father appealed, and we have

---

[1]        Mother's parental rights to the children were terminated, but she is not a party to this appeal.

jurisdiction under A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶4**         To support the termination of parental rights, DCS must prove at least one statutory ground for termination by clear and convincing evidence. A.R.S. § 8-537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *ADES v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). We review the court's termination decision for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. ADES*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

## A. The Juvenile Court Did Not Abuse Its Discretion by Terminating Father's Parental Rights to the Children Under the Length-of-Felony Sentence Ground.

**¶5**         Father argues the juvenile court erred by terminating his parental rights to the children under the length-of-felony sentence ground. To terminate Father's rights under this ground, DCS was required to establish by clear and convincing evidence that Father "is deprived of civil liberties due to the conviction of a felony" and Father's sentence "is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4); *see also Michael J. v. ADES*, 196 Ariz. 246, 251, ¶ 28 (2000).

**¶6**         Because Father does not dispute that he has been deprived of his civil liberties due to a felony conviction, we only address whether reasonable evidence supports the juvenile court's finding that Father's sentence is of such a length that the children will be deprived of a normal home life for a period of years. This is a fact-specific inquiry based on consideration of all relevant evidence. *Michael J.*, 196 Ariz. at 251, ¶ 29. Relevant factors to consider include but are not limited to:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to

3

> provide a normal home life, and (6) the effect of the
> deprivation of a parental presence on the child at issue.

*Michael J.*, 196 Ariz. at 251–52, ¶ 29. Here, the juvenile court addressed each consideration.

**¶7**        Regarding the parent-child relationship before incarceration, the court found that the relationship "was not particularly strong." The court found that Father was not living with the children before his imprisonment because he was sleeping in a car outside the shelter where the children were staying. The DCS case manager also testified that the children rarely talked about Father after coming into DCS's care. Additionally, based on Father's testimony about his activities with the children, the court determined that he was not a primary caretaker of the children.

**¶8**        Concerning the possibility of maintaining a parent-child relationship during incarceration, the court did not agree with Father's testimony that he could keep a healthy relationship and parent from prison. The court emphasized the children's young ages and the lack of meaningful contact Father can have with them while incarcerated.

**¶9**        Regarding the age of the children and the likelihood Father's incarceration will deprive the children of a normal home life, the court found the children's "collective young age . . . makes it virtually impossible to maintain anything approaching a normal parent-child relationship." At the time of Father's incarceration, the children's ages ranged from one-and-a-half to seven years old.

**¶10**        The court correctly considered the total length of the sentence, the maximum release date of December 2022, and a potential earlier release date of September 2022. Furthermore, the court noted that the "time needed for services to be completed after release" may extend the time for reunification. The court found a realistic reunification date would be "mid to late 2023 at the earliest."

**¶11**        The court found that another parent is not available because Mother's rights had been terminated.

**¶12**        Finally, the court considered the effect that the deprivation of a parental presence would have on the children and found that the children would "essentially be left adrift if Father's rights are not severed." The court determined that a healthy relationship would be highly unlikely and

4

emphasized that Father "does not understand what information should be conveyed to the children regarding his situation."

¶13     On appeal, Father contends that he had a strong relationship with the children before his incarceration and that DCS should have provided visitation. Father further argues that the lack of visitation prevented him from maintaining the relationship during his imprisonment. Father's arguments relate to the first and second *Michael J.* factors regarding Father's relationship with the children before and during his incarceration. However, Father never raised these issues with the juvenile court. Father has, therefore, waived his claims regarding visitation. *Shawanee S. v. ADES*, 234 Ariz. 174, 179, ¶¶ 17–18 (App. 2014) (failure to give the juvenile court "reasonable opportunity to address . . . and ensure that [DCS is] in compliance with its obligation to provide appropriate reunification services" waives the alleged error). Moreover, these arguments ask this court to reweigh the juvenile court's evaluation of the factors; however, this court will "not reweigh evidence, but only look to determine if there is evidence to sustain the juvenile court's ruling." *Maricopa County Juv. Action No. JV-132905*, 186 Ariz. 607, 609 (App. 1996).

¶14     None of the factors are dispositive, and reasonable evidence supports each finding. The evidence demonstrated that Father did not have a strong relationship with the children before his incarceration and that Father would not have been able to maintain a healthy relationship during his imprisonment. Because reasonable evidence supports the court's findings, the court did not abuse its discretion in evaluating the factors. *Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

¶15     Father also argues that his seven-year sentence is not enough to support termination. There is "no 'bright line' definition of when a sentence is sufficiently long to deprive a child of a normal home." *Michael J.*, 196 Ariz. at 251, ¶ 29. The court must, therefore, weigh all the relevant factors. *Id.* Here, the court considered all the *Michael J.* factors and individually considered the length of the sentence. When evaluating the length of the sentence, the court considered the "totality of the circumstances," including the potential for an earlier release date. Reasonable evidence supports the court's finding that the factors, including the seven-year sentence, indicate the children will be deprived of a healthy home for years.

¶16     Accordingly, we conclude the court did not err by finding that Father's sentence is of such a length that the children will be deprived of a normal home life for a period of years.

**B. The Juvenile Court Did Not Abuse Its Discretion by Concluding Termination of Father's Parental Rights Was in the Children's Best Interests.**

¶17 Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa County Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. DCS*, 245 Ariz. 146, 146, ¶ 1 (2018). "When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 12 (2016). Finally, "[t]he existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. DCS*, 240 Ariz. 96, 98, ¶ 12 (App. 2016).

¶18 Here, the juvenile court found that the children's needs were being met in their current placement and that adoption of the children by a single adoptive placement was likely and possible. The children are currently placed together in a licensed foster home. The DCS case manager testified that this placement is meeting all their needs and is willing to adopt all four children.

¶19 Father does not challenge the court's findings concerning the children's adoptability. Instead, Father argues that the best-interests finding was incorrect for the same reasons the court's analysis of the statutory ground for termination was incorrect. Father contends that he has a relationship with the children and that, by "not permitting visitation or contact," DCS skewed the best-interests finding. As previously stated, Father waived any objection concerning DCS's conduct regarding visitation by failing to raise it until after the termination hearing. *Shawanee S.*, 234 Ariz. at 179, ¶¶ 17–18. Regardless, this does not change the finding that the children would benefit from adoption because Father could not provide a normal home for years. The children were immediately adoptable and would benefit from the stability adoption would provide. Reasonable

evidence supports the court's finding that severance was in the best interests of the children because adoption is likely and possible. *Demetrius L.*, 239 Ariz. at 4, ¶ 16 ("It is well established in state-initiated cases that [a] child's prospective adoption is a benefit that can support a best-interests finding."). Thus, we conclude the juvenile court did not err by finding the termination of Father's parental rights was in the children's best interests.

## CONCLUSION

¶20    For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights to the children.



AMY M. WOOD • Clerk of the Court
FILED:  AA

7